UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  3/26/2025
```

OWEN CHAIKIN,        )
                     )
   Plaintiff  )
                     )
vs.                  )     C.A. No.: 7:24-cv-2490
                     )
                     )     **Defendant Nissan Motor Acceptance Company's motion to**
TRANSUNION, LLC,     )     **compel arbitration and stay is DENIED without prejudice to**
EQUIFAX INFORMATION SERVICES LLC,  )  **renew on the reply date May 1, 2025. Defendant Nissan**
EXPERIAN INFORMATION SOLUTIONS, INC. )  **Motor Acceptance Company's motion was filed prematurely**
NISSAN MOTOR ACCEPTANCE  )  **and Defendant is directed to refer to the Court's Order**
CORPORATION,         )     **(ECF No. 46.). The Clerk of Court is directed to terminate**
                     )     **the motion at ECF No. 47.**
   Defendants. )
                     )     Dated: March 26, 2025
                     )             White Plains NY

SO ORDERED:
NELSON S. ROMÁN
United States District Judge

**MEMO ENDORSED**

### DEFENDANT NISSAN MOTOR ACCEPTANCE COMPANY LLC'S COMPEL ARBITRATION AND STAY LITIGATION PURSUANT TO THE FEDERAL ARBITRATION ACT WITH INCORPORATED MEMORANDUM

Defendant Nissan Motor Acceptance Company LLC f/k/a Nissan Motor Acceptance Corporation ("NMAC"), by and through counsel, and pursuant to the Federal Arbitration Act, 9 U.S.C. §1, *et. seq.*, respectfully moves this Court to enter an order compelling Plaintiff Owen Chaikin ("Plaintiff") to arbitrate his claims and staying the litigation pursuant to the Federal Arbitration Act. In support of its Motion, NMAC states as follows:

### I.  INTRODUCTION

The lawsuit contains allegations that NMAC violated the Fair Credit Reporting Act ("FCRA") stemming from the alleged incorrect reporting of Plaintiff's August 31, 2015, lease of a 2015 Nissan Murano on from Teddy Nissan, LLC, which was assigned to Nissan-Infiniti LT and NMAC as the servicer (the "Lease"). The Lease includes a binding mandatory arbitration clause ("Arbitration Clause"), which NMAC can now enforce. *See* NMAC Decl., ¶5, Ex. 1, at ¶29. The

1

Arbitration Clause is extremely broad and mandates that all controversies or claims between Plaintiff and NMAC shall be determined by individual arbitration. *Id*.

Specifically, Plaintiff alleges the Credit Reporting Agencies ("CRAs") were reporting inaccurate information regarding his NMAC account, because he incorrectly alleges NMAC repossessed and sold the Vehicle, therefore, the amount owed, as furnished by NMAC, was wrong; that he disputed the information reported, and that NMAC failed to correct or investigate the allegedly inaccurate information. *See* Complaint [Doc. 1]. A stay was placed on the litigation during the pendency of sanctions litigation against Plaintiff's Counsel in another FCRA litigation matter pending in the Eastern District of New York, *Scheindle Sofer v. TransUnion, et al.*, 1:23-cv-04844-DLI-JAM, until October 29, 2024. [Doc. 34]. The sanctions litigation in that case was resolved, when the movant withdrew its petition to pursue relief against Plaintiff's Counsel in a RICO case pending in the Central District of California, *Experian v. Stein Saks, et al.*, 8:24-cv-1186 (C.D. Ca Jun. 3, 2024). See *Scheindle*, supra at Dkt. 70. NMAC attempted resolve this matter in good faith with Plaintiff, but was unable to do so. NMAC was left with no alternative but to move to compel arbitration.

The parties' arbitration agreement is governed by the Federal Arbitration Act. The Supreme Court and Second Circuit Court of Appeals case law is clear that the parties' agreement to arbitrate is enforceable and that the proper forum for Plaintiff's disputes is in arbitration. Thus, for the reasons detailed below, Plaintiff should be compelled to arbitrate his disputes with NMAC.

For these reasons, NMAC respectfully requests this Court (1) compel Plaintiff to individual arbitration; and (2) stay this action pending arbitration.

## II.     LEGAL STANDARDS

The purpose of the Federal Arbitration Act ("FAA"), 9 U.S.C. §1, was to reverse the

enduring "judicial hostility to arbitration agreements that existed at English common law" and that was subsequently adopted by American courts. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991) (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 219–20, and n. 6, (1985)). The drafters of the Act intended to place arbitration agreements "upon the same footing as other contracts, where it belongs," and overrule "the judiciary's longstanding refusal to enforce agreements to arbitrate." *Dean Witter*, 470 U.S. at 219–20 (quoting H.R. Rep. No. 96, 68th Cong., 1st Sess., 1 (1924)); *see also Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 89 (2000). ("We conclude, however, on consideration of Congress' intent in passing the statute, that a court must compel arbitration of otherwise arbitrable claims, when a motion to compel arbitration is made. The legislative history of the Act establishes that the purpose behind its passage was to ensure judicial enforcement of privately made agreements to arbitrate.").

The FAA thus reflects "'a liberal federal policy favoring arbitration', and the 'fundamental principle that arbitration is a matter of contract.'" *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1745 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983). Indeed, in *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, the Supreme Court characterized the federal policy favoring arbitration as "emphatic." 473 U.S. 614, 631 (1985). The FAA requires a court to enforce agreements between parties to arbitrate, and "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997).

The FAA requires courts to stay or dismiss proceedings and to compel arbitration if an issue in controversy is covered by a valid arbitration agreement. 9 U.S.C. §§ 3, 4; *Concepcion*, 131 S.Ct. at 1748. "The FAA 'expresses a liberal federal policy favoring arbitration agreements

and . . . any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Cupples v. Valic Fin. Advisors, Inc.*, 13-CV-4501(JS)(AKT), 2014 WL 4662272, at *6 (E.D.N.Y. Sep. 18, 2014) (citing *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 223 (2d Cir. 2001)).

Because of this liberal policy favoring arbitration agreements, "the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2nd Cir. 1997), quoting *Associated Brick Mason Contractors of Greater New York, Inc. v. Harrington*, 820 F.2d 31, 35 (2nd Cir. 1987); see also *Lok v. Experian Information Solutions, Inc.*, 2022 WL 889215, 21-cv-154-NSR, at *1 (S.D. NY March 25, 2022). Courts are to "construe arbitration clauses as broadly as possible." *S.A. Mineracado da Trindade-Samitri v. Utah Inernational, Inc.,* 745 F.2d 190 (2d Cir. 1984).

The Second Circuit has set out a three-part test in determining whether a dispute falls within the scope of an arbitration clause. *First,* a court must determine if the clause is broad or narrow. *Cupples,* 2014 WL 4662272, at *6. *Second,* if the clause is narrow, "the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause." *Id.* (internal quotation marks and citation omitted). *Third,* if the clause is broad, "there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction of the parties' rights and obligations under it." *Id.* (internal quotation marks and citation omitted).

### III. STATEMENT OF FACTS

**A. Plaintiff Agreed to Arbitrate Disputes Regarding his NMAC Account.**

On August 31, 2015, Plaintiff entered into the Lease, which required 35 monthly payments of $765.00 each beginning on October 1, 2015. NMAC Decl., ¶3, Ex. 1. On the first page of the Lease, in a box bolded box, is text that reads "**Notice Regarding Arbitration:** By signing below, you acknowledge that this Lease contains an arbitration clause and that you have read it. **READ THE ARBITRATION CLAUSE IN SECTION 29 BEFORE SIGNING HERE**." NMAC Decl., Ex. A., p.1. Plaintiff's signature appears just under this language. Below this box, there is another bolded notice which states, "**Notice to Lessee: (1) Do not sign this Lease before you read it or if it contains any blank spaces to be filled in; (2) You are entitled to a completely filled in copy of this Lease when you sign it**...**YOU ACKNOWLEDGE THAT YOU HAVE READ BOTH SIDES AND RECEIVED A COMPLETED COPY OF THIS LEASE BEFORE SIGNING BELOW**." *Id*. Plaintiff's signature appears below these notices. *Id.*

The Arbitration Clause is provided in paragraph 29, on the second page of the Lease. At the outset of the clause, in large bold font, it alerts Plaintiff, **ARBITRATION CLAUSE – IMPORTANT – PLEASE REVIEW – AFFECTS YOUR LEGAL RIGHTS**. NMAC Decl., Ex. 1, ¶29. The arbitration clause is broad, covering "any claim or dispute, whether in contract, tort, statute or otherwise... which arises out of or relates to your credit application, lease or condition of the vehicle, this Lease agreement or any resulting transaction or relationship..." *Id*. Plaintiff accepted the terms of the Lease, including the Arbitration Clause (*Id*., at p. 1), and took possession of the Vehicle. [Doc. 1].

5

## IV.     ARGUMENT

Plaintiff's Complaint is subject to arbitration because (1) the Arbitration Clause is subject to the FAA, 9 U.S.C. §1, *et seq*; (2) the Arbitration Clause is a valid and enforceable contract; and (3) the Arbitration Clause encompasses Plaintiff's claims.

### A.     The Parties Are Bound By Their Valid, Written Arbitration Agreement.

The Court must look to ordinary contract principles in determining whether a party is bound by the terms of a written arbitration agreement. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995). The agreement to arbitrate in the Lease is specifically governed by the FAA.[1] NMAC Decl., Ex. 1, ¶29.  Thus, the FAA governs the enforceability of the arbitration agreement according to its terms, and New York law governs the determination of whether a valid contract to arbitrate exists. *See Kaplan*, 514 U.S. at 944.

The materiality and importance of the Arbitration Clause was made clear to Plaintiff by the emphasis placed on the provision and the notices to Plaintiff to ensure he read the entire agreement, and specifically the Arbitration Clause, before signing the Lease, as set forth in Section III above.

The court has the threshold determination of whether an agreement to arbitrate exists. *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2nd Cir. 2012).  The language of the Lease meets the criteria to form a binding contract.  In New York, contract formation requires "an offer, acceptance, consideration, mutual assent and intent to be bound." *Louros v. Cyr*, 175 F.Supp.. 2d 497, 512 n.5 (S.D. NY 2001).  Specifically, the language of the Lease evidences the manifested willingness to enter into a bargain, stated the terms, and explained the means of accepting, and

---

[1] "Any arbitration under this Arbitration Clause shall be governed by the Federal Arbitration Act (9 U.S.C. §1, et seq.) and not by any state law concerning arbitration." NMAC Decl., Ex. 1, ¶29.

Plaintiff accepted the offer by signing the contract financing the Lease, using the Vehicle, and paying NMAC payments as explained in the Lease. The mutual promises embodied in the contract constituted consideration and intent to be bound. See *Register.com Inc. v. Verio Inc.*, 356 F.3d 393, 427 (2d Cir. 2019) quoting *Maffea v. Ippolito*, 668 N.Y.S. 2d 653, 654 (2d Dept. 1998) (manifestation of mutual assent "may be by word, act, or conduct which *evinces the intention of the parties to contract*." (emphasis in original)(internal citations omitted)), NMAC Decl., Ex 1. Accordingly, the Lease is valid and enforceable under state contract law principles. As such, the Arbitration Clause and the Lease are placed directly at issue in this matter and should be referred to arbitration.

### B. The Broad Language in the Arbitration Clause Covers Plaintiff's Dispute.

Under the Second Circuit's three-part test, it is clear that Plaintiff's claims fall within the substantive scope of the provisions of the arbitration agreements as set forth in the Lease.

As the Second Circuit has instructed, the Court must first determine if the arbitration clause is broad or narrow. *See Cupples,* 2014 WL 4662272, at *6. Here, the broad arbitration clause governs "*any* claim or dispute, whether in contract, tort, statute or otherwise… between you and us… which arises out of or relates to" the application, lase, or resulting relationship or transaction. *See* Decl., Ex. 1, ¶29. Where, as here, the arbitration clause is broad, there is a presumption of arbitrability, also applying to collateral matters, "if the claim alleged implicates issues of contract construction of the parties' rights and obligations under it." *Cupples*, supra, at *6. (internal quotation marks and citation omitted).

When determining the scope of an arbitration provision, a court must look to the factual allegations of the complaint and determine whether the claims alleged therein touch matters covered by the arbitration provisions. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,

7

473 U.S. at 625 n. 13.  In making this analysis, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration."  *Volt Info. Sci., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989).

The Arbitration Clause governing Plaintiff's NMAC account provides that any claim under "contract, tort statute or otherwise" shall be considered in arbitration per the below:

> **ARBITRATION CLAUSE – IMPORTANT – PLEASE REVIEW – AFFECTS YOUR LEGAL RIGHTS**
> 1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE, EXCEPT AS STATED BELOW, BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
> 2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
> 3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.
>
> Except as otherwise stated below, any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this clause and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, lease or condition of this vehicle, this Lease agreement or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Lease) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Clause shall not apply to such claim or dispute. The claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose one of the following arbitration

*See* Decl., Ex. 1, ¶29.  Where the parties' arbitration clause is broad, the Supreme Court has held that there is a heightened presumption of arbitrability such that "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."  *AT&T Tech v. Communications Workers of America*, 475 U.S. 643. 650 (1985).  Plaintiff here cannot show "with positive assurance that the arbitration clause is *not susceptible of an interpretation that covers the asserted dispute*."  *Id.*, (emphasis added) (internal citations omitted).  This heavy presumption of

8

arbitrability dictates that any ambiguity in the scope of the Arbitration Clause be resolved in favor of arbitration. *Id.* Plaintiff's claims relate to the Lease and underlying NMAC account.

Further, the Supreme Court has held that "claims arising under a statute designed to further important social policies may be arbitrated because 'so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum,' the statute serves its function." *GreenTree Fin. Corp.-Ala v. Randolph*, 531 U.S. 79, 90 (2000). The Arbitration Clause does not alter Plaintiff's ability to assert and vindicate his statutory rights under the law. Rather, the Lease merely changes the venue in which he may do so. As shown above, Plaintiff's claims against NMAC fall within the scope of the Arbitration Clause, therefore, Plaintiff must submit his claims to binding arbitration.

### C. This Court Should Compel Arbitration and Stay this Case Pending Arbitration.

As shown above, the Arbitration Clause controls, therefore, the Court should enter an order compelling the parties to arbitration. Section 3 of the FAA provides that, in any lawsuit "referable to arbitration," the court "shall on application of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement…" 9 U.S.C. §3. Here, a binding arbitration clause applies to this action, and therefore the Court should stay this action pending the outcome of arbitration. See *Katz v. Cellco Partnership*, 794 F.3d 341, 345 (2d Cir. 2015) ("We joint those circuits that consider a stay of proceedings necessary after all claims have been referred to arbitration and a stay requested.") The Arbitration Clause is controlling, enforceable, and the claims fall within its scope; therefore, Plaintiff's claims against NMAC should be stayed.

## CONCLUSION

For the foregoing reasons, NMAC respectfully requests that the Court compel Plaintiff to arbitrate his claims against NMAC and stay the litigation of Plaintiff's claims against NMAC.

Dated: March 11, 2025

                                              Respectfully submitted,

                                              */s/ Jonathan M. Marmo*
                                              Jonathan M. Marmo
                                              NY Bar # 4239323
                                              HOLLAND & KNIGHT LLP
                                              1650 Market Street, Suite 3300
                                              Philadelphia, PA 19103
                                              Telephone:  215-252-9600
                                              Jonathan.Marmo@hklaw.com

                                              *Attorneys for Defendant*
                                              *Nissan Motor Acceptance Company, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 11, 2025, the foregoing Defendant's Motion to Compel Arbitration and Stay was electronically filed with the Clerk of Court using the ECF electronic filing system, which automatically serves all counsel of record.

                                                      */s/ Jonathan M. Marmo*
                                                      Jonathan M. Marmo

6UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OWEN CHAIKIN,<br><br>    Plaintiff<br><br>vs.<br><br>TRANSUNION, LLC,<br>EQUIFAX INFORMATION SERVICES LLC,<br>EXPERIAN INFORMATION SOLUTIONS, INC.<br>NISSAN MOTOR ACCEPTANCE<br>CORPORATION,<br><br>    Defendants. | )<br>)<br>)<br>)  C.A. No.: 7:24-cv-2490<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DECLARATION OF** _John King, Manager_ **ON BEHALF OF NISSAN MOTOR ACCEPTANCE CORPORATION LLC**

John King [Name], being first duly sworn and upon [his/her] oath, states and declares as follows:

    1.    I am a Manager [title] with Nissan Motor Acceptance Company LLC ("NMAC"). Based on my position with NMAC and the access it provides, I have knowledge of the facts and circumstances stated in this declaration.

    2.    In the course of its regular business, NMAC generates and maintains records for consumer accounts created by: (i) a consumer entering into a retail installment contract with NMAC, whereby NMAC provides financing for the consumer to purchase a motor vehicle and also receives a perfected lien on the same; or (ii) a retail installment contract NMAC subsequently purchases from other entities, whereby the prior entities' rights under the retail installment contract are then contractually assigned to NMAC. As for NMAC's business records, these records include acts, transactions, payments, communications, and account notes ("NMAC Records"). The information described in this affidavit and attached to same is found in the business records of

1

NMAC, which records are maintained by NMAC in the course of its ordinary conducted business activities. The entries in those records are made at the time of the events and conditions they describe either by people with first-hand knowledge of those events and conditions or from information provided by people with such first-hand knowledge. I have access to the NMAC Records and have knowledge of how they are maintained. Based upon these records, I have gained knowledge of the facts set forth in this affidavit and, if called upon as a witness to testify, could and would competently testify as to those facts, under the penalty of perjury.

3. On August 31, 2015 Plaintiff Owen Chaikin ("Chaikin") entered into a Motor Vehicle Lease Agreement ("Lease"), pursuant to which Chaikin agreed to pay monthly payments in exchange for leasing a 2015 Nissan Murano with a VIN ending in 61576 (the "Vehicle"). This Lease is contained in NMAC's books and records and is maintained and kept in the ordinary court of NMAC's regularly conducted business activity. This Lease and any related documents are stored and preserved at a time at or near the time the agreement was executed.

4. The Lease was assigned to NMAC.

5. The Arbitration Clause is outlined within the Lease. *Id.*, at p. 2.

**FURTHER AFFIANT SAYETH NAUGHT.**

NISSAN MOTOR ACCEPTANCE COMPANY LLC

BY: *John King*

ITS: *Manager*

STATE OF Texas
COUNTY OF Dallas

(seal)

SARA SNEED
Notary ID #134233408
My Commission Expires
March 3, 2027

Subscribed and sworn to (or affirmed) before me on this 5 day of November, 2023, by Sara Sneed, proved to Me on the basis of satisfactory evidence to Be the person(s) who appeared before me.

Signature: _____
of Notary Public

2

# EXHIBIT 1



**Signature LEASE®**

**NISSAN MOTOR ACCEPTANCE CORPORATION**

## MOTOR VEHICLE LEASE AGREEMENT WITH ARBITRATION CLAUSE – NEW YORK

### 1. PARTIES

| Lessor: | | | |
|---|---|---|---|
| Lessor (Dealer): TEDDY NISSAN, LLC | Phone: (718) 515-1111 | Lease Date: 08/31/2015 | |
| Street Address: 3660 BOSTON RD | City, St, Zip: BRONX NY 10469 | NMAC Dealer #: _____ | |

| Lessee & Co-Lessee: | | | |
|---|---|---|---|
| Lessee Name: OWEN CHAIKIN | Co-Lessee: N/A | Name of Driver (if Business): N/A | |
| Street Address: 440 PLEASANT ST | City, St, Zip: NEW LONDON NH 03257 | County: _____ | |
| Mailing Address: N/A | City, St, Zip: N/A | County: N/A | |
| Garaging Address: _____ | City, St, Zip: _____ | County: _____ | |

"You" and "your" refer equally to the Lessee and Co-Lessee (if any) signing this Lease. "We," "us" and "our" refer to the Dealer, or if this Lease is assigned, to Nissan-Infiniti LT ("NILT") and/or any other assignee. "Vehicle" refers to the Motor Vehicle described below, including attachments, equipment, the battery and accessories, including any charging accessories included with the vehicle. You agree to lease this Vehicle from us under the terms on the front and back of this Lease. You understand that this is a Lease. You do not own this Vehicle, unless and until you exercise your option to purchase this Vehicle.

### 2. DESCRIPTION OF LEASED PROPERTY

☒ New ☐ Used ☐ Charging Accessories    Odometer Reading: 15
Year: 2015  Make: NISSAN  Model: MURANO  Body Style: 4DR AWD SL
Color/Key Code: WHT/16587  VIN: 5N1AZ2MH0FN261576

PRIMARY USE: ☐ Commercial  ☒ Personal, Family or Household
WARNING: Important consumer protections may not apply if this Lease indicates that the Vehicle is being leased primarily for agricultural, business or commercial use.

### 3. FEDERAL CONSUMER LEASING ACT DISCLOSURE BOX

| AMOUNT DUE AT LEASE SIGNING OR DELIVERY (From Section 4, itemized below) $1465.00 | MONTHLY PAYMENTS Your first monthly payment of $765.00 is due on signing, followed by 35 payments of $765.00 due on the 1st of each month, beginning on 10/01/15. The total of your monthly payments is $27540.00 | OTHER CHARGES* (Not part of your monthly payment) a) Disposition Fee (if you do not purchase the Vehicle) $395.00 b) N/A + $ N/A c) N/A + $ N/A d) Total = $395.00 *In addition, you may have to pay excess wear and use and mileage, if any. | TOTAL OF PAYMENTS (The amount you will have paid by the end of the Lease) $28635.00 |
|---|---|---|---|

### 4. ITEMIZATION OF AMOUNT DUE AT LEASE SIGNING OR DELIVERY

| AMOUNT DUE AT LEASE SIGNING OR DELIVERY | | HOW THE AMOUNT DUE AT LEASE SIGNING OR DELIVERY WILL BE PAID | |
|---|---|---|---|
| a) Capitalized Cost Reduction including any net trade-in allowance $612.50 | h) N/A + $ N/A | I) Net Trade-In Allowance $ N/A | |
| b) First Monthly Payment + $765.00 | i) NY TIRE FEE + $12.50 | II) Rebates and Non-Cash Credits + $700.00 | |
| c) Refundable Security Deposit + $ N/A | j) DOC + $75.00 | III) Amount To Be Paid in Cash + $765.00 | |
| d) Title Fees + $ N/A | k) N/A + $ N/A | IV) Total = $1465.00 | |
| e) Registration Fees + $ N/A | l) N/A + $ N/A | | |
| f) Tax on Cap Cost Reduction + $ N/A | m) N/A + $ N/A | | |
| g) Sales Tax Paid in Advance + $ N/A | o) Total = $1465.00 | | |

### 5. YOUR MONTHLY PAYMENT IS DETERMINED AS SHOWN BELOW

| a) Gross Capitalized Cost The agreed upon value of the Vehicle ($40953.82) and any items you pay over the lease term such as taxes, fees, service contracts, insurance and any outstanding prior credit or lease balance. If you want an itemization of this amount, please see Section 8. | = $52044.82 |
|---|---|
| b) Capitalized Cost Reduction The amount of any net trade-in allowance, rebate, non-cash credit or cash you pay that reduces the gross capitalized cost. | - $612.50 |
| c) Adjusted Capitalized Cost The amount used in calculating your base monthly payment. | = $51432.32 |
| d) Residual Value The value of the Vehicle at the end of the Lease used in calculating your base monthly payment. | - $23973.60 |
| e) Depreciation and Any Amortized Amounts The amount charged for the Vehicle's decline in value through normal use and for other items paid over the lease term. | = $27458.72 |
| f) Rent Charge The amount charged in addition to the depreciation and any amortized amounts | + $81.28 |
| g) Total of Base Monthly Payments The depreciation and any amortized amounts plus the rent charge. | = $27540.00 |
| h) The Number of Payments in Your Lease | ÷ 36 |
| i) Base Monthly Payment | = $765.00 |
| j) Monthly Sales, Use or Lease Tax | + $ N/A |
| k) Monthly Luxury Tax | + $ N/A |
| l) Total Monthly Payment | = $765.00 |

### 6. IMPORTANT TERMS

**Early Termination.** You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease the greater this charge is likely to be. See Section 14.

**Excessive Wear and Use.** You may be charged for excessive wear based on our standards for normal use and for mileage in excess of [12000] miles per year at the rate of [15] cents per mile. See Section 20. ☐ If this box is checked, this mileage includes [N/A] miles over the term of the Lease purchased at _____.

[N/A] cents per mile, which is included in your monthly payment. There will be no refund for unused miles, including any additional miles purchased by you.

**Purchase Option at End of Lease Term.** You have an option to purchase the Vehicle at the end of the lease term for $23973.60 and a Purchase Option Fee of $300. See Section 15.

**Other Important Terms.** This Lease contains additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

### 7. NEW YORK MOTOR VEHICLE LEASE DISCLOSURE BOX

| a) Capitalized Cost (The sum of the adjusted capitalized cost and the capitalized cost reduction. The capitalized cost and the amount of rental charge may be negotiable.) | $52044.82 |
|---|---|
| b) Capitalized Cost Reduction (cash downpayment plus net trade-in value) | - $612.50 |
| c) Adjusted Capitalized Cost (The amount which is capitalized in connection with this Lease and is used in determining the amount of your periodic payment. This amount will be used in determining the legal limit of your early termination liability. Although the "adjusted capitalized cost" is not referred to in the early termination provisions of this Lease, the "adjusted capitalized cost" may be used to compare the early termination provisions of competing lessors.) | = $51432.32 |
| d) Estimated Residual Value | $23973.60 |

### 8. ITEMIZATION OF GROSS CAPITALIZED COST

The following items you will pay over the lease term and are in your monthly payment:
| a) Agreed upon value of the Vehicle | $40953.82 |
|---|---|
| b) Up-Front Sales Tax, if applicable | + $ N/A |
| c) Title, License and Registration | + $325.00 |
| d) Acquisition Fee | + $595.00 |
| e) Service Contract(s) and/or Maintenance Contract(s) (See Section 11) | + $ N/A |
| f) Credit Life and/or Disability Insurance (See Section 11) | + $ N/A |
| g) Prior Credit or Lease Balance | + $10171.00 |
| h) N/A | + $ N/A |
| i) N/A | + $ N/A |
| j) N/A | + $ N/A |
| k) N/A | + $ N/A |
| l) N/A | + $ N/A |
| m) Total Gross Capitalized Cost | = $52044.82 |

### 9. VEHICLE WARRANTIES

This Vehicle is covered by any warranty, extended warranty, service contract or maintenance contract indicated below:
☒ Standard New Vehicle Limited Warranty provided by the manufacturer or distributor of this Vehicle.
☐ Mechanical Breakdown Protection (MBP), a service contract for the repairs of certain major mechanical breakdowns of this Vehicle and related expenses.
☐ Maintenance Contract, a contract for regularly scheduled care and maintenance of this Vehicle.
☐ Used Vehicle Limited Warranty
☐ N/A

EXCEPT AS EXPRESSLY PROVIDED UNDER THIS LEASE, WE OFFER NO EXPRESS OR IMPLIED WARRANTIES WITH RESPECT TO THIS VEHICLE. WE MAKE NO IMPLIED WARRANTY OF THE QUALITY OF THE GOODS EXCEPT AS OTHERWISE PROVIDED IN THIS CONTRACT. THE LESSOR ASSUMES NO RESPONSIBILITY THAT THE GOODS WILL BE FIT FOR ANY PARTICULAR PURPOSE FOR WHICH YOU MAY BE LEASING THESE GOODS, EXCEPT AS OTHERWISE PROVIDED IN THE CONTRACT.

### 10. ESTIMATED FEES AND TAXES

The estimated total amount you will pay for official and license fees, registration, title and taxes, including personal property taxes, over the term of your Lease, whether included with your monthly payments or assessed otherwise is $1012.50. The actual total of fees and taxes may be higher or lower depending on the tax rates in effect or the value of the leased property at the time a fee or tax is assessed.

### 11. OPTIONAL INSURANCE, COVERAGES AND WARRANTIES

These products are not required to enter into this Lease and will not be provided unless you initial below. If insurance, coverages and/or warranties are purchased by you, these are shown in a notice given to you on this date. These products may not be available in some states.

| a) Credit Life Insurance | $ N/A PREMIUM |
|---|---|
| INSURER N/A | INITIAL COVERAGE AMOUNT |
| N/A | N/A / N/A |
| INSURED(S) | LESSEE INITIALS / CO-LESSEE INITIALS |
| b) Credit Disability Insurance | $ N/A PREMIUM |
| INSURER N/A | N/A |
| N/A | INITIAL COVERAGE AMOUNT |
| INSURED(S) | N/A / N/A |
| | LESSEE INITIALS / CO-LESSEE INITIALS |
| c) Mechanical Breakdown Protection | $ N/A CHARGE |
| (Covers parts of Vehicle up to sooner of N/A months or N/A miles) | |
| N/A PROVIDER | N/A / N/A LESSEE INITIALS / CO-LESSEE INITIALS |
| d) Maintenance Contract | $ N/A CHARGE |
| N/A PROVIDER | N/A / N/A LESSEE INITIALS / CO-LESSEE INITIALS |
| e) N/A | $ N/A CHARGE |
| N/A PROVIDER | N/A / N/A LESSEE INITIALS / CO-LESSEE INITIALS |
| g) N/A | $ N/A CHARGE |
| N/A PROVIDER | N/A / N/A LESSEE INITIALS / CO-LESSEE INITIALS |
| Total Premiums/Charges | $ N/A |

### SIGNATURES

**SignatureDIRECTPAY AUTHORIZATION AGREEMENT (Not required. Please complete and sign if you want this option.)**
You agree to let us debit the payments shown in this contract from your account electronically when they are due. The payments will be debited from the Bank or other financial institution listed below. You also agree to let your Bank honor the debit requests. You agree to continue to make your payments until you are notified by us that the debit payment is engaged. This agreement will be in effect until all the payments have been made. You can stop the debits at any time by giving us and your Bank written notice to cancel that allows a reasonable period of time to act. You acknowledge that we will not send you paper monthly billing statements. You will be able to view your monthly billing statement electronically by logging in and registering at www.nissanfinance.com. You agree to provide us with a voided check that has your Bank name, branch address and account number so we can arrange the debits.

| N/A | N/A | N/A |
|---|---|---|
| SIGNATURE/DATE (LESSEE OR CO-LESSEE) | SIGNATURE/DATE (BANK ACCOUNT OWNER OR JOINT OWNER IF OTHER THAN LESSEE OR CO-LESSEE) | BANK NAME |

**Lessee   PLEASE SEE OTHER SIDE FOR ADDITIONAL TERMS AND CONDITIONS.**

**NOTICE: THIS CONTRACT CONTAINS AN ARBITRATION CLAUSE. PLEASE SEE OTHER SIDE.**

**Notice Regarding Arbitration:** By signing below, you acknowledge that this Lease contains an arbitration clause and that you have read it. READ THE ARBITRATION CLAUSE IN SECTION 29 BEFORE SIGNING HERE.

Lessee Signature: [signature]   Co-Lessee signature: N/A

This Lease and the Special Notice – New York set forth all of our agreements between the Lessee, Co-Lessee (if applicable) and Dealer, NILT, or any other assignee, if this Lease is assigned, and can only be changed by written agreement between the Lessee, Co-Lessee (if applicable) and Dealer, NILT, or any other assignee, if this Lease is assigned. The Lessee undertakes no responsibility for the accuracy of or obligation with respect to any representations or verbal agreements. Any provision of this Lease which is invalid, illegal or unenforceable shall be ineffective without affecting in any way the remaining provisions. All lessees and guarantors are jointly and severally liable.

**Notice to the Lessee:** (1) Do not sign this Lease before you read it or if it contains any blank spaces to be filled in; (2) You are entitled to a completely filled in copy of this Lease when you sign it; (3) If you default in the performance of your obligations under this Lease, the Vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidenced by this Lease.

**YOU ACKNOWLEDGE THAT YOU HAVE READ BOTH SIDES AND RECEIVED A COMPLETED COPY OF THIS LEASE BEFORE SIGNING BELOW.**

**MOTOR VEHICLE LEASE AGREEMENT**

| [signature] | N/A | N/A |
|---|---|---|
| LESSEE SIGNATURE | BUSINESS NAME | NAME (PLEASE PRINT) |
| N/A | N/A | N/A |
| CO-LESSEE SIGNATURE | BY (SIGNATURE) | TITLE |

### Guarantor

For purposes of this section, I/we/my/our/me/us refers solely to Guarantor. I/We jointly, severally and unconditionally guarantee the performance of all payment and other obligations of the Lessee, under this Lease. Upon any default by Lessee, Lessor may, at Lessor's option, proceed immediately against me/us without first proceeding against Lessee, any other guarantor or taking possession of and disposing of this Vehicle. My/Our liability is primary and will be unaffected by any settlement, compromise, extension, renewal or modification of this Lease or by any release or discharge of Lessee or other guarantor. I/We waive all notices and all rights to demands and presentments. This guarantee inures to the benefit of Lessor's successors and assigns.

| N/A | N/A | N/A |
|---|---|---|
| GUARANTOR SIGNATURE | GUARANTOR SIGNATURE | GUARANTOR SIGNATURE |
| N/A | N/A | N/A |
| PRINT NAME | PRINT NAME | PRINT NAME |

### Lessor

a) Lessor accepts the terms of this Lease; and b) Lessor assigns and transfers to Nissan-Infiniti LT ("NILT") all of Lessor's rights, title and interest in and to this Vehicle and this Lease including all amounts payable thereunder, pursuant to the terms of the applicable written Retailer Agreement between Lessor and Nissan Motor Acceptance Corporation ("NMAC"), the benefits of which have been assigned by NMAC to NILT. Any guaranty by Retailer is made notwithstanding the terms of the Retailer Agreement.
By signing below, the Lessor accepts the terms and conditions of this Lease.

| TEDDY NISSAN, LLC | [signature] |
|---|---|
| LESSOR (PRINT NAME) | TITLE |

NILT/N 3001-NY 4/15

### 12. Vehicle Return

When your Lease terminates, whether early or as scheduled, you will return the Vehicle to a Nissan dealer or other location we specify. You will complete a statement of this Vehicle's mileage at termination as required by federal law. If you keep possession of this Vehicle past the end of the lease term, you will continue to pay the monthly payments, but you agree that you have no right to keep this Vehicle unless you enter into a written agreement with us extending the lease term. You will pay us for any damages we suffer because you failed to return this Vehicle to a Nissan dealer or other location we specify or because you failed to return this vehicle at the end of the lease term. We may determine our damages in one of the following two ways at our election and in our sole discretion: a) by charging you the Total Monthly Payment for each month the Vehicle is not returned as required plus any other amounts due under Sections 13 and 25; or b) by charging you for amounts due under the formula provided in Section 14 and any amounts due under Sections 13 and 25.

### 13. Scheduled Termination

The scheduled term of your Lease is the number of months corresponding to the number of monthly payments identified in Sections 3 and 5. At the end of the lease term, you will return this Vehicle and pay us immediately:
  a) a Disposition Fee equal to the amount disclosed in Section 3 which we will waive if this Lease is not in default and you concurrently enter a new lease or retail contract financed by NMAC; plus
  b) all past-due monthly payments, and other charges under this Lease; plus
  c) any amounts owed as a result of excessive wear and use, as disclosed in Section 20; plus
  d) any Excess Mileage Charge at lease maturity, or an Excess Mileage Charge for the period for which this Lease was in effect pro-rated monthly, as disclosed in Section 6; plus
  e) any taxes related to the termination.

### 14. Early Termination

  a) **Conditions for YOUR early termination. At any time after either 12 monthly payments have been paid, or, if earlier, the first fifty percent of the total number of months constituting the full scheduled lease term have elapsed, you may voluntarily terminate this Lease if this Lease is not in default, and if you pay the early termination liability as set forth in Section 14.c). Early termination may require you to pay a substantial charge.**
  b) **Conditions for OUR early termination.** We may terminate this Lease before the end of the lease term under Section 26 or if you are in default as described in Section 25.
  c) **Amounts you will owe at Early Termination.** If this Lease is terminated before the end of the lease term, under Section 14.a) or Section 14.b), then you will pay us:
    I) the amounts disclosed in Section 13; plus
    II) an Early Termination Charge equal to the difference, if any, between the Adjusted Lease Balance and this Vehicle's Fair Market Wholesale Value or, if we do not terminate this Lease under Section 14.b), an Early Termination Charge equal to the sum of the Base Monthly Payments not yet due, if less; plus
    III) if you are in default, the amounts disclosed in Section 25.
  d) For an electric vehicle, if we abandon our interest in the charging accessories, we may exclude the value of the charging accessories from the determination of Fair Market Wholesale Value.

"Adjusted Lease Balance" is a charge in today's dollars ("today" being the date the Lease is terminated) for Base Monthly Payments not yet due and the Residual Value of the Vehicle. Our method of calculating "today's dollars" is the Constant Yield Method, a generally accepted accounting formula.

"Fair Market Wholesale Value" is the wholesale value assigned by us in a commercially reasonable manner in accordance with accepted practices in the automobile industry for valuation of used vehicles, or by a written agreement as to the Vehicle's value signed by you and us. If you disagree with the value we assign to the Vehicle, you may obtain, at your own expense, within **10** days after you return the Vehicle, a professional appraisal of this Vehicle's wholesale value or comparable value made by an independent third party agreeable to both you and us (the "Professional Appraisal"). If a Professional Appraisal is used to value the Vehicle, no amounts disclosed in Section 20 will be due from you.
In the event early termination of this Lease occurs at your election pursuant to Section 14.a), you hereby agree that the Fair Market Wholesale Value is the wholesale value, loan value or comparable value listed for the Vehicle, at the time of the early termination, in one of the following used vehicle valuation guides, at our election: National Automobile Dealers Association (NADA), Kelley or Black Book.

### 15. Purchase Option

You have the option to purchase this Vehicle "AS IS" from the originating dealer, or other location we specify, in cash for the Purchase Option Price, plus any official fees and taxes, vehicle inspection costs required in connection with the purchase, and a Purchase Option Fee of **$300.00**, which fees, taxes and costs are not included in the Purchase Option Price agreed to in Section 6. If you purchase the Vehicle at the end of the lease term, the Purchase Option Price will be the Residual Value shown in Section 5.d). If you purchase the Vehicle before the end of the lease term, the Purchase Option Price will be the Adjusted Lease Balance disclosed in Section 14). In either case, you must also pay other amounts due under this Lease at the time of purchase.

### VEHICLE INSURANCE, MAINTENANCE, PAYMENTS AND USE

### 16. Insurance

You are responsible for the following minimum types and amounts of coverage ("Required Insurance") during the lease term: a) Comprehensive, including fire and theft insurance if this Vehicle is a car, or fire, theft and combined additional coverage if this Vehicle is a truck, with a maximum deductible of **$1,000**; b) Collision insurance with a maximum deductible of **$1,000**; c) Property damage liability of **$50,000** per occurrence; and d) Bodily injury liability of **$100,000** per person and **$300,000** per occurrence. Your insurance policy must name us as loss payee on coverages (a) and (b) and provide us with primary coverage as an additional insured on coverages (c) and (d). You will provide us with proof of insurance at our request. Your insurance policy must provide us with at least **30** days notice of any cancellation, reduction or other material change in coverage. You appoint us as your attorney-in-fact to arrange for and procure payment of insurance loss proceeds directly with your insurance carrier(s) and to endorse, present and collect insurance loss proceeds checks.
**NO PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS IS INCLUDED IN THIS LEASE.**

### 17. Late Charge, Returned Check Charge, Fines, and Fees

If any monthly payment is not received in full by us within **10** days after its due date, you will pay a late charge of **5%** of the monthly payment due or **$25.00**, whichever is less or as allowed by state law, plus any applicable taxes. Payments shall be applied to the most past-due payment first. If any payment (including any electronic funds transfer) you make to us is not honored, or is charged back to us, in addition to any late charge, you will pay us a **$10.00** service charge, or such other charge as allowed by law, plus any applicable taxes. You will pay when due any official fee or fine imposed on this Vehicle, such as a toll charge, parking ticket, traffic or toll violation. Should we have to pay any such fee or fine on your behalf, you will pay us the amount of the fine or fee plus a **$20.00** administrative charge, or such other charge as allowed by law, plus any applicable taxes.

### 18. Official Fees and Taxes

You will pay when due all official fees and taxes, including registration, title and license fees, and personal property taxes related to this Vehicle or this Lease, which are incurred during the lease term, even if they are assessed after this Lease terminates. Should we have to pay any official fee or tax on your behalf, you will pay us the amount of the official fee or tax, and any interest or penalties assessed. You may also agree to pay personal property taxes in advance of the applicable due date, by mutual settlement of an estimated amount with us.

### 19. Vehicle Maintenance and Use

**You agree to maintain this Vehicle at your own expense. You agree to follow the owner's manual and maintenance schedule and to make all necessary repairs and replacement of parts, which includes maintaining adequate records of the vehicle maintenance. Failure to properly maintain this vehicle in accordance with the owner's manual and/or maintenance schedule may result in charges in addition to excessive wear and use charges.** This Vehicle may not be used for any illegal purpose or to transport people or goods for hire. Except for occasional and incidental use (not to exceed a total of **3** days in any month) by other licensed, qualified, insured operators with your permission, you shall retain possession of this Vehicle. Except as allowed in this Section, you will not alter or install any equipment upon this Vehicle and will pay the amount it would cost to restore this Vehicle to its original condition. You may elect to have an airbag on/off switch installed in the Vehicle, at your expense, if you have received prior written approval from the National Highway Transportation Safety Administration ("NHTSA") and you provide us written notice (including a copy of the NHTSA approval and the dealer's written confirmation of the installation) within **30** days after installation. The switch must be installed by an authorized Nissan dealer using Nissan parts. If an airbag on/off switch is installed, you release us from any claims, losses or damages resulting from such installation, improper installation or your use or improper use of the switch. For an electric vehicle, you agree that we own the battery and that you may replace it only with our permission and only with a genuine Nissan battery specified for use with the vehicle. Any such replacement battery will be deemed an accession to the vehicle and our property. We may elect to abandon any interest we have in charging accessories. You agree to indemnify us for any loss, liability or expense arising from the use or condition of this Vehicle. You agree to keep this Vehicle free from liens and encumbrances. If you leased this Vehicle in the 48 contiguous United States, you will not remove this Vehicle from these 48 states without our prior consent. If you leased this Vehicle in Alaska, Hawaii, or Guam, you will not remove this Vehicle from that state or territory without our prior consent. If you remove this Vehicle from your state of residence or the garaging address identified in this Lease such that new registration or licensing will be required, you will notify us immediately in writing and will bear all related expenses. You will provide and complete any document necessary to comply with any applicable federal, state or local law regarding this Vehicle or this Lease.

### 20. Excessive Wear and Use

You are responsible for all repairs to this Vehicle that are not the result of normal wear and use. At the end of the lease term or at early termination, you will pay us either the actual cost of repairs paid by us that are not the result of normal wear and use or the amount of a true itemized estimate of the cost of such repairs. If required by law, any such itemized statement will be determined by an appraiser licensed pursuant to the N.Y. Vehicle and Traffic Law § 398(d) as selected by us. At early termination, you will pay for all repairs to the Vehicle that are not the result of normal wear and use which we actually pay for. These repairs include, but are not limited to, the costs necessary to:
  a) REPAIR: inoperative mechanical parts including power accessories; dents, scratches, chips or rusted areas on the body; mismatched paint; broken windows or inoperative window mechanisms; broken headlight lenses or sealed beams; dents, cuts, scratches or gouges in the bumper; broken grilles or dents in the grilles; single dents or a series of small dents on other trim parts, including headlight and taillight bezels; or seats, seat belts, head lining, door panels or carpeting that are torn or are damaged beyond ordinary wear and use or are burned.
  b) REPLACE: any windshield damaged with chips, cracks or bull's-eyes; any tire not part of a matching set of **5** tires (or four with an emergency spare), or tires with less than **1/8"** of tread remaining at the shallowest point, or tires which are not a matching set of tires of comparable type and quality to the tires furnished with this Vehicle upon commencement of this Lease; missing parts, accessories and adornments, including bumpers, ornamentation, aerials, hubcaps, chrome stripping, rearview mirrors, radio and stereo components, or emergency spare.

You agree that upon notice from us and as allowed by State law, you will make the Vehicle available to us prior to the scheduled termination of this Lease, at a reasonable time and place to be designated by us, so that we may inspect the Vehicle for purposes of determining excessive wear and use. You agree that any assignee of this Lease is not bound by any statements or representations made by any dealer regarding excess wear and use or the vehicle condition upon return. You agree that for the purposes of determining excess wear and use the only inspection(s) that will be used is(are) the inspection(s) made by the assignee or its designated inspection contractor. If you fail to adhere to manufacturer maintenance and inspection requirements, we may charge you for any resulting excessive wear and use or damages to the vehicle, including, but not limited to, any loss in value attributable to any manufacturer cancellation or reduction of warranties.

### ADDITIONAL INFORMATION

### 21. Notices and Communications

Unless you give prior notice of a change in an address, we may send any notices to one or more of the Lessee's addresses shown on this Lease. Any notice will be deemed sufficiently given to a Co-Lessee if sent to the Lessee's address, unless you give us written notice of a separate address. You will notify us within **30** days of any address change. To the extent permitted by law, you consent that we, our assignees, and our agents may contact you at any telephone number we have for you, including any cell phone numbers and any phone numbers listed on this document, by any means we select, including an automatic telephone dialing system, text messaging, and/or an artificial or pre-recorded voice.

### 22. Security Deposit (if collected)

We may use the security deposit to offset any amounts that you owe under this Lease. If you perform all of your obligations under this Lease, the security deposit will be returned to you after lease termination. No interest, increase or profits will accrue or be due to you. We have no duty to segregate the security deposit and do not have a fiduciary duty to you in regards to the security deposit.

### 23. Security Interest

Unless otherwise precluded by applicable law, you give us a security interest in this Vehicle or in proceeds, cancellation refunds or other rights under any contract issued with respect to this Vehicle, this Lease or any addendum to this Lease, including, without limitation, insurance contracts, maintenance contracts, repair contracts and extended warranty or service contracts.

### 24. Assignment

We may assign our interest in this Lease without prior notice and without your consent. If this Lease is assigned to NILT, NILT, Nissan Motor Acceptance Corporation ("NMAC") acts as servicer.
YOU AGREE THAT YOU HAVE NO RIGHT TO ASSIGN, TRANSFER OR SUBLEASE ANY OF YOUR RIGHTS UNDER THIS LEASE.

### 25. Default and Payments

You will be in default if a) you do not make a payment when due; b) any information on your or a guarantor's credit application is false; c) you do not maintain insurance coverage required by this Lease; d) you do not timely or properly perform any promise under this Lease; e) you or a guarantor become subject to bankruptcy or insolvency proceedings; f) you die; g) you commit any other act constituting default under applicable law. In the event of default and subject to your right to reinstate your Lease described in this section, we may terminate this Lease and, after giving any legally required notice: (i) charge you for early termination liability pursuant to Section 14; (ii) repossess this Vehicle as allowed by law; (iii) charge you for our costs of such repossession, storing, transporting and disposing of this Vehicle; (iv) charge you for our costs of collection, any court costs and attorneys' fees (not to exceed **15%** of the amounts due and payable under this Lease) to the extent permitted by applicable law; (v) sue you for damages and to recover this Vehicle; (vi) pursue any other legally permitted remedy; and/or (vii) charge you interest at the rate of **6%** per annum or such other rate as may be allowed by applicable law on any termination liability owed under Sections 13 and 14. If you are in default solely due to a failure to make a monthly payment when due and you have not previously been afforded the opportunity to reinstate this Lease, you may, without losing any rights or options previously acquired under this Lease, cure the default within this Lease. To cure the default you must, within **25** days after we have sent you a written notice of your reinstatement rights, pay all past due monthly payments, delinquency charges, a reinstatement fee of **$10.00** and the actual and reasonable costs of repossession, storage, pickup and redelivery of the Vehicle. To the extent permitted by law, you agree that if we accept moneys in sums less than those due, accept payments which are received after their scheduled due dates, or make extensions of due dates of payments under this Lease, doing so will not be a waiver of our right to enforce the lease terms as written as to any amounts due thereafter. We may accept payments with "Payment in Full," similar language or other restrictive endorsements without being bound by such language or waiving any of our rights.

### 26. Damage, Loss or Potential Loss of This Vehicle

You are responsible for the risk of loss, damage or destruction of this Vehicle during the lease term and until you return this Vehicle to us as required above. If this Vehicle is damaged or destroyed in an accident or other occurrence or confiscated by any governmental authority or is stolen or abandoned or subjected to potential loss, you will immediately notify us and we may terminate this Lease pursuant to the terms of this Lease. **If this Vehicle is stolen (and not recovered) or destroyed, we will accept insurance loss proceeds in full satisfaction of your early termination liability under Section 14.** If the insurance loss proceeds exceed your early termination obligations, then the excess will not be refunded to you. Any capitalized cost reduction made by you will not be refunded in the event of a total loss. If the Vehicle is a total loss, there is no Purchase Option, and you have no right to retain the Vehicle for salvage. If you owe any past due payments or other amounts under this Lease, we may use your security deposit to offset such amounts. All damages which do not result in a total loss of the Vehicle must be repaired. We may require proof of satisfactory repairs before agreeing to or endorsing the payment of insurance proceeds to you. This may include requiring an inspection of the vehicle. Repairs which involve severing the Vehicle into two or more parts are not permitted. Only Genuine Nissan parts may be used to repair the Vehicle. Repairing the Vehicle with used parts may void the manufacturer's warranty or any additional warranties, service contracts or maintenance contracts covering the Vehicle. If used parts are installed to repair the Vehicle, the used parts must be Genuine Nissan Remanufactured parts, be of the same model year or newer than the parts being replaced and, if applicable, the mileage of the used part must be the same or less than the mileage of the Vehicle prior to its damage. Used parts must not have been previously damaged or defective. Used body panels cannot replace damaged body panels.

### 27. Indemnity

**You agree to indemnify us from, and to pay on our behalf, any claim, loss or liability (including damages, costs, expenses and legal fees) which arises from or is related to the use, maintenance or operation of the Vehicle. This Section will survive termination of this Lease and/or repossession of the Vehicle. Any insurance we provide is secondary to the Required Insurance.**

### 28. Notices Regarding Assignments

If this Lease and the Vehicle are assigned by the Dealer to NILT, then:
(1) The Dealer is hereby notified that NILT has assigned to Nissan-Infiniti Services Co. (NISC) NILT's rights (but not its obligations) to acquire the Vehicle upon Lease inception; and
(2) The Dealer and Lessee are hereby notified that NILT's rights (but not its obligations) in the sale of the Vehicle, if the Vehicle is subsequently purchased from NILT, will be assigned to NISC immediately prior to the purchase of the Vehicle. If the Lessee is purchasing the Vehicle, the Lease and the Vehicle are sold to a dealer, who will then sell the Vehicle to the Lessee.

### 29. ARBITRATION CLAUSE – IMPORTANT – PLEASE REVIEW – AFFECTS YOUR LEGAL RIGHTS

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE, EXCEPT AS STATED BELOW, BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Except as otherwise stated below, any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this clause and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, lease or condition of this vehicle, this Lease agreement or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Lease) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Clause shall not apply to such claim or dispute. The claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose one of the following arbitration organizations, and its applicable rules, to conduct the arbitration: JAMS (800 352-5267, www.jamsadr.com), the American Arbitration Association (800 778-7879, www.adr.org), or any other organization subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.
Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statutes of limitation. Unless applicable law provides otherwise, the arbitration hearing shall be conducted in the federal district in which you reside unless the Dealer originating this Lease is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will pay your filing, administration, service and case management fee, your arbitrator and hearing fee and any arbitration appeal fees you incur all up to a maximum of $5,000, unless the law requires us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims are frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this clause, then the provisions of this clause shall control. The arbitrator's award shall be final and binding on all parties, except that you may appeal any arbitrator's award pursuant to the rules of the arbitration organization, and we may only appeal an award against us exceeding $100,000. Any arbitration under this Arbitration Clause shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration.
You retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, and we agree to reimburse your filing fees for such proceedings. You and we retain any rights to self-help remedies, such as repossession. You also retain the right to seek individual injunctive relief in court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Clause does not apply to any claim or dispute relating to excessive wear and use, including collection or payment disputes. This Arbitration Clause shall survive any termination, payoff or transfer of this Lease. If any part of this Arbitration Clause, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Clause shall be unenforceable.