USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  5/15/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OWEN CHAIKIN,

                            Plaintiff,

            -against-

TRANSUNION, LLC; EQUIFAX
INFORMATION SERVICES LLC;
EXPERIAN INFORMATION
SOLUTIONS, INC.; and NISSAN MOTOR
ACCEPTANCE CORPORATION,

                            Defendants.

**24 CV 02490 (NSR)**

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff Owen Chaikin ("Plaintiff") initiated this action alleging that Nissan Motor Acceptance Company LLC ("NMAC") violated the Fair Credit Reporting Act ("FCRA") when it allegedly incorrectly reported Plaintiff's August 31, 2025 lease of a 2015 Nissan Murano from Teddy Nissan, LLC. (*See* Complaint, ECF No. 1.)

Presently before the Court is Defendant NMAC's motion to compel arbitration and stay litigation. (ECF No. 54.) Plaintiff opposes NMAC's motion. (ECF No. 52.) For the following reasons, NMAC's motion is GRANTED.

## BACKGROUND

### A. Factual Background

On August 31, 2015, Plaintiff leased a 2015 Nissan Murano from Teddy Nissan LLC (the "Lease" or "Lease Agreement"). (Def. Mem of L. at 1.) The Lease was due to mature in August 2018. (Pl. Opp. at 2.) According to Plaintiff, in June 2018, the vehicle was repossessed and subsequently sold. (*Id.*) Plaintiff claims that, despite the repossession and resale, NMAC continued to report a charge-off for the full lease balance on Plaintiff's credit reports, without accounting for

1

the proceeds from resale. (*Id.*) Plaintiff further alleges that he disputed the inaccurate reporting with the major credit bureaus and with NMAC directly, but NMAC nevertheless failed to update or correct the reporting. (Id.)

Defendant claims that Plaintiff fell behind on his payments under the Lease and the vehicle was impounded by the Edison, New Jersey police, not repossessed. (Def. Reply at 2.) The Lease includes a binding mandatory arbitration clause that NMAC now seeks to enforce. Plaintiff argues that NMAC does not have a right to enforce the arbitration clause and that, even if it did, Plaintiff's claims are not within the scope of the arbitration clause. (Pl. Opp. at 3-12.)

### B. Procedural Background

Plaintiff filed his Complaint on April 2, 2024. (ECF No. 1.) On August 16, 2024, this Court issued a joint stipulation voluntarily dismissing this action as to Equifax Information Services, LLC. (ECF No. 36.) On August 16, 2024, this Court issued a joint stipulation voluntarily dismissing this action as to Experian Information Solutions, Inc. (ECF No. 51.)

NMAC moved to compel arbitration and for a stay of this litigation pending arbitration. (ECF No. 54.) Plaintiff filed an opposition to NMAC's motion. (ECF No. 52.)

### LEGAL STANDARD

### A. Motion to Compel Arbitration

When deciding whether to compel arbitration, courts consider whether (1) the parties agreed to arbitrate and (2) the arbitration agreement includes the disputed claim or claims. *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015). According to the Supreme Court, the Federal Arbitration Act ("FAA") "embodies [a] national policy favoring arbitration." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). Due to the "strong federal policy in favor of arbitration, the existence of a broad agreement to arbitrate creates a presumption of

arbitrability which is only overcome if 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997) (quoting *Associated Brick Mason Contractors of N.Y., Inc. v. Harrington*, 820 F.2d 31, 35 (2d Cir.1987)) (citation omitted).

Courts are required to analyze a motion to compel arbitration under a standard similar to that applied to motions for summary judgment; if there is a genuine issue of fact surrounding the purported agreement to arbitrate, the court cannot compel arbitration. *Kutluca v. PQ N.Y. Inc.*, 266 F. Supp. 3d 691, 700 (S.D.N.Y. 2017) (citing *Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). "A party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010).

## DISCUSSION

### I.    NMAC's Right to Enforce the Arbitration Clause

Plaintiff argues that Defendant has not established that it was assigned the right to enforce the arbitration clause because the Lease Agreement was between Plaintiff and Nissan-Infiniti LT ("NILT") not NMAC. (Pl. Opp. 3-9.) The Court disagrees.

Plaintiff ignores that NMAC provided the Lease Agreement, as evidenced by the fact that "Nissan Motor Acceptance Corporation" is written on the top right corner of the Agreement, and that the Lease Agreement itself provides not only the arbitration clause, but also the assignment of the Lease, the relationship between NILT and NMAC, and NMAC's role in the Lease. (*See* King Decl., Edmond Aff., Ex. 1.) The Lease Agreement states in its first paragraph, "'You' and 'your' refer equally to the Lessee and Co-Lessee (if any) signing this Lease. 'We,' 'us' and 'our' refer to

the Dealer, or if this Lease is assigned, to Nissan-Infiniti LT ('NILT') and/or any other assignee."
(*Id.*, Ex. 1, pg. 1.) At the end of the first page of the Lease is the assignment, which states, "a)
Lessor accepts the terms of this Lease; and b) Lessor assigns and transfers to Nissan-Infiniti LT
('NILT') *all of Lessor's rights, title and interest in and to this Vehicle and this Lease* including all
amounts payable thereunder, pursuant to the terms of the applicable written Retailer Agreement
between Lessor and Nissan Motor Acceptance Corporation ('NMAC'), the benefits of which have
been assigned *by NMAC* to NILT for purposes of leases assigned to NILT." (*Id.*) (emphasis added).
Further, paragraph 24 of the Lease states, "[i]f this Lease is assigned to NILT… Nissan Motor
Acceptance Corporation ('NMAC') acts as servicer." (*Id.*, at pg. 2, ¶ 24.) Thus, the assignment in
this case was part of the contract which contained the Lease, assigning all rights, and set forth
NMAC's role. NILC took its assignment through NMAC, which, in all acts alleged by Plaintiff,
was acting as the servicing agent of NILT.

"Under principles of estoppel, 'signatories to an arbitration agreement can be compelled to
arbitrate their claims with a non-signatory where a careful review of the relationship among the
parties, the contracts they signed ..., and the issues that had arisen among them discloses that the
issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that
the estoped party has signed.'" *In re A2P SMS Antitrust Litig.*, 972 F. Supp. 2d 465, 476
(S.D.N.Y. 2013) (quoting *Denney v. BDO Seidman, L.L.P.,* 412 F.3d 58, 70 (2d Cir.2005) (internal
quotation marks omitted)). "[I]n addition to the 'intertwined' factual issues, there must be
a relationship among the parties of a nature that justifies a conclusion that the party which agreed
to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar
dispute with the adversary which is not a party to the arbitration agreement." *Id.* (quoting *Sokol
Holdings, Inc. v. BMB Munai, Inc.,* 542 F.3d 354, 359 (2d Cir.2008)). "Courts in this district have

4

distilled these requirements and established a two-part 'intertwined-ness' test, under which they 'examine whether: (1) the signatory's claims arise under the "subject matter" of the underlying agreement, and (2) whether there is a "close relationship" between the signatory and the non-signatory party.'" *Id.* (quoting *Ragone v. Atl. Video at Manhattan Ctr.*, No. 07 CIV. 6084 (JGK), 2008 WL 4058480, at *8 (S.D.N.Y. Aug. 29, 2008), *aff'd*, 595 F.3d 115 (2d Cir. 2010)).

Here, Plaintiff's claims arise under the Lease. Plaintiff claims NMAC is misreporting the Lease debt information to the credit reporting agencies, including the total amount owed under the Lease, which is based on payments missed, as well as the total amount owed due to Plaintiff's loss of the vehicle. However, Plaintiff also claims that NMAC repossessed the vehicle and thus the arbitration clause does not cover his FCRA claims because they concern post-repossession credit reporting. (Pl. Opp. at 1, 9-12.) NMAC claims that the vehicle was in fact impounded by Edison, New Jersey police, not repossessed. (Def. Reply at 9.) Whichever the case, as NMAC puts it, "[t]he appropriateness of NMAC's reporting is determined by the terms of the Lease; therefore, Plaintiff's claims arise from and are related to the Lease." (Def. Reply at 4.) Further, as explained *supra*, there is a close relationship between the signatory and the non-signatory because NMAC provided the Lease, and the Lease itself contemplated NMAC's role by referencing NMAC multiple times and expressly describing its relationship with NILT. (*See* King Decl., Edmond Aff., Ex. 1.) Accordingly, there is no genuine issue of fact that NMAC has a right to enforce the arbitration clause.

## II.    Plaintiff's Claims Are Arbitrable

Even assuming arguendo that the claims did not arise under the subject matter of the Lease, the parties delegated the very question of arbitrability to the arbitrator. The arbitration clause of the lease states:

*See* King Decl., Edmond Aff., Ex. 1, ¶ 29. The arbitration clause provides for the arbitrator to determine the "interpretation and scope of [the arbitration clause] and the arbitrability of the claim or dispute." *Id.* The Supreme Court has recognized that, under the FAA, which governs the parties' arbitration agreement, "parties can agree to arbitrate 'gateway' provisions of 'arbitrability,' such as whether the parties agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). If a court concludes that the parties intended such delegation, its inquiry ends, and it must compel arbitration without addressing the merits of any challenge to arbitrability that is not directed specifically to the delegation clause. *Id.*, at 68-72; *see also Dean Witter Reynolds, Inc., v. Byrd*, 470 U.S. 213, 218 (1985) ("[C]ourts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.")

Here, the parties have agreed to arbitrate such questions of arbitrability. On the first page of the Lease, in a box bolded box, is text that reads "**Notice Regarding Arbitration**: By signing below, you acknowledge that this Lease contains an arbitration clause and that you have read it. **READ THE ARBITRATION CLAUSE IN SECTION 29 BEFORE SIGNING HERE**."

NMAC Decl., Ex. A., p.1. Plaintiff's signature appears just under this language. Below this box, there is another bolded notice which states, "**Notice to Lessee: (1) Do not sign this Lease before you read it or if it contains any blank spaces to be filled in; (2) You are entitled to a completely filled in copy of this Lease when you sign it...YOU ACKNOWLEDGE THAT YOU HAVE READ BOTH SIDES AND RECEIVED A COMPLETED COPY OF THIS LEASE BEFORE SIGNING BELOW.**" *Id.* Plaintiff's signature appears below these notices. *Id.* The arbitration clause itself is provided in paragraph 29, on the second page of the Lease. At the outset of the clause, in large bold font, it alerts Plaintiff, **ARBITRATION CLAUSE – IMPORTANT – PLEASE REVIEW – AFFECTS YOUR LEGAL RIGHTS**. Thus, there was ample notice on the Lease Agreement itself of the arbitration clause and Plaintiff agreed to it by signing it.

The arbitration clause also encompasses "any claim or dispute, whether in contract, tort, *statute*, or otherwise, between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, lease or condition of this vehicle, this Lease agreement or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Lease)." *Id.* (emphasis added). Here, Plaintiff's FCRA claim is statutory and, as discussed *supra*, arise under the subject matter of the Lease. Notwithstanding this, whether Plaintiff's FCRA claim is suitable to arbitration is a gateway question of arbitrability in and of itself covered by the arbitration clause.

Accordingly, Plaintiff's FCRA claim is covered by the arbitration clause of the Lease Agreement.

**CONCLUSION**

For the foregoing reasons, NMAC's motion to compel arbitration and stay litigation is GRANTED.

The Clerk of the Court is respectfully directed to stay this action pending arbitration and to terminate the motion at ECF No. 54.

SO ORDERED.

Dated: May 15, 2026
White Plains, New York

_____
Hon. Nelson S. Roman
U.S. District Court Judge, S.D.N.Y.